J-S16025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                            :           PENNSYLVANIA
                                            :

            v.                                   :
                                            :

MATTHEW SISLER                   :
                                            :

          Appellant              :    No. 1288 EDA 2020

Appeal from the Judgment of Sentence Entered January 2, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002177-2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:           Filed: October 7, 2021

      Matthew Sisler appeals from the judgment of sentence imposed after a jury found him guilty of numerous crimes: Rape by Impairment, Rape of a Child, Statutory Sexual Assault, Aggravated Indecent Assault of a Person Under 16, Aggravated Indecent Assault of a Child, Incest, Endangering the Welfare of a Child, Corruption of a Minor, Unlawful Contact with a Minor, Unauthorized Use of Intoxicant, two counts of Sexual Abuse of a Minor (Creating Child Pornography and Possession of Child Pornography), and Person not to Possess a Firearm. We affirm in part, based on the trial court's opinion. However, we vacate the denial of Sisler's post-sentence motion challenging the constitutionality of the registration requirements of

_____

[*] Former Justice specially assigned to the Superior Court.

Subchapter H of the Sex Offender Registration and Notification Act ("SORNA"),[1] and remand for further proceedings.

After Sisler was charged with the aforementioned crimes, the case proceeded to a jury trial wherein Sisler's daughter C.S., the victim, testified. C.S., who was fourteen years old at the time of the arrest, explained that Sisler had been molesting her since she was seven years old.

She described having been woken up one night by Sisler who told her she was having trouble sleeping and talking in her sleep. He then gave her a pill, which she swallowed, and told her to go back to sleep. C.S. later awoke to Sisler touching and grabbing her breasts over her pajamas. *See* N.T. Trial, 8/19/19, at 51-54.

This happened multiple times and Sisler progressed to touching C.S. under her clothing, and then eventually stopped using his hand and started using his penis, including putting his penis inside of her vagina. C.S. explained that on these occasions, Sisler would come in at night, tell her she was having trouble sleeping, and give her a pill. *See id.* at 55-56.

In addition to touching C.S.'s breasts, Sisler would touch her vagina including putting his hand inside her vagina. She explained that while she was sleeping, he would come into her room and start taking her clothes off and she would awake to him moving his hand in and out of her vagina. This

---

[1] *See* 42 Pa.C.S.A §§ 9799.10-9799.42.

happened on more than one occasion, starting when she was about nine years old. *See id.* at 60-62.

At times, Sisler would come into C.S.'s bedroom, take her clothes off and push her onto her side. He would then put lotion on his penis and stick it inside her. C.S. explained that when this happened, she would instantly get up and tell him to stop. Sisler did this to her more than one time beginning when she was about twelve or thirteen. *See id.* at 62-64.

On occasion, Sisler would come into C.S.'s bedroom while she was sleeping and would use his mouth, licking her vagina. She explained that she would usually wake up not knowing what was happening but could tell what he was doing because she could feel pressure holding her down and would look down and see Sisler's mouth on her vagina. C.S. would tell him to stop and start kicking and would pull herself out of the bed. This happened about twice when she was twelve or thirteen. *See id.* at 63-65.

In addition, at times Sisler would put C.S.'s hand on his penis when she was asleep. When she awoke and tried to move her hand away, he kept putting it back and moved it up and down on his penis until he ejaculated. *See id.* at 68.

C.S. also testified that Sisler had taken pictures of when she was unconscious and asleep. She explained that he hid a camera in her bedroom and tried to video record her as she got out of the shower. *See id.* at 69.

C.S. explained that during these incidents her mom was sleeping in the living room. She did not tell her mom right away because Sisler "said if [she]

ever told [her] mom he was going to hurt [her]." *Id.* at 65. C.S. testified that she was also scared of Sisler because he used to hit her with a belt and the back of his hand.

C.S. testified that over time she "started to realize what was going on" and stopped taking the pills that Sisler was giving her. *Id.* at 56. Sisler then began to put the pills into her food. C.S. explained that at times she would taste something in her food and notice little pieces of pill. Specifically, she recounted an incident where Sisler had baked cookies late at night and gave her one. She "took a bite and it tasted different," so she "looked inside and there was red pills." *Id.* at 57.

On another occasion, C.S. explained that she was sitting with her parents in the living room drinking a milkshake that Sisler had made for her, when a piece of pill got stuck inside the straw. C.S. asked Jennifer Geyer, her mother, what it was. Geyer said it was a pill and asked C.S. why it was in her milkshake. *See id.* at 174. C.S. then looked at Sisler who "freaked out," he "started screaming and saying he didn't put it in there[, she] put it in here [herself]." *Id.* at 59. Sisler and Geyer then got in an argument where Sisler kept saying that C.S. was trying to frame him for something. About two weeks later, Sisler brought up the incident again asking Geyer "what if [C.S.] gets mad at me and tells somebody that I molested her." *Id.* at 152; *see id.* at 60.

Geyer testified that after Sisler brought up the idea of C.S. framing him, she suspected that something was wrong. *See id.* at 152. She told C.S about

Sisler's comment and asked if he had ever done anything weird. C.S. told her that Sisler "touched [her] since [she] was seven years old." *Id.* at 163; *see id.* at 70. When she said this, C.S. was crying hysterically so Geyer did not ask for any details.

Geyer explained that initially she did not know what to do, and was afraid that Sisler would hurt them, so she went to Corey Romanowski, a family friend who was a paramedic and whose son worked in law enforcement, to ask for advice. *See id.* at 122, 164, 166. After C.S. told Romanowski that her father had molested her, Romanowski and his wife contacted local law enforcement and notified them of the suspected abuse. *See id.* at 127, 134, 143.

On September 17, 2018, Detective Christopher Boheim, Sergeant Charles LaRue, and a Monroe County Children and Youth caseworker, Melissa Snyder, came to the family's apartment. Detective Boheim spoke with Geyer, who confirmed that her daughter, C.S., had disclosed that she had been sexually abused by Sisler. *See id.* at 249. He then, together with the caseworker asked some preliminary questions of C.S. who was hysterical at the time. In response to the questioning, C.S. confirmed that Sisler touched her above and under her clothes, touched her with his penis, touched her vagina with his penis, and put his fingers inside her vagina. *See id.* at 251.

At one point Sisler asked Detective Boheim if Sisler could go inside and get a cigarette. The detective accompanied Sisler inside and observed a firearm directly beneath Sisler's cigarettes. The firearm and cigarettes were

located on an end table with several other items including two of Sisler's cell phones, his wallet, and his tablet. ***See id.*** at 255-59; N.T. Trial, 8/20/19, at 38.

Meanwhile, the caseworker spoke with C.S. and explained the Child Advocacy Center ("CAC") process to C.S. and asked if she would go with her to the CAC. ***See*** N.T. Trial, 8/19/19, at 204-05. At the CAC, C.S. underwent a forensic interview and medical examination.

Dr. Olumbunmi Salako, M.D., conducted the medical exam of C.S. During the exam, Dr. Salako noted that C.S. was very depressed. She also observed a general neglect of personal hygiene that was out of the norm for a person of C.S.'s age range. ***See*** N.T. Trial, 8/20/19, at 11. During the physical examination, Dr. Salako noted that she was able to see C.S.'s hymen, and that there was no evidence of acute trauma. ***See id.*** at 15. Dr. Salako explained that "in young females, because a hymen is intact does not mean that there wasn't any kind of penetration." ***Id.*** at 16. Dr. Salako obtained a hair sample from C.S, which tested positive for Zolpidem, a sedative hypnotic. ***See id.*** at 132, 134.

At trial, Detective Boheim testified that when he executed a search warrant on the residence, he found a prescription for Zolpidem, a Sig Sauer .380 caliber firearm with two rounds in the magazine, three cell phones, a tablet, and a computer hard drive. ***See*** N.T. Trial, 8/19/19, at 257, 259; N.T. Trial, 8/20/19, at 39-40, 45-47. Geyer later found an SD card in Sisler's

camera and dropped it off at the Monroe County District Attorney's Office. **See** N.T. Trial, 8/20/19, at 182-83.

A search of the electronic devices revealed photos and a video depicting nudity and a young female in various stages of undress. **See id.** at 155-78. Geyer confirmed that she was able to identify herself in some of the images, and C.S. in some of the images. She explained that she did not know that the pictures were being taken and did not give permission for Sisler to take the photos. **See id.** at 184-85, 188. Geyer identified C.S. in several of the pictures including one where C.S.'s face was not visible, but Geyer recognized her based on her familiarity as a mother with her daughter's body, and the clothing that C.S. had been wearing. **See id.** at 191, 204. Geyer explained that one of the videos depicting C.S. without pants or underwear was taken in the master bedroom. **See id.** at 193. In another photo, Geyer identified C.S. dressed only in a towel with wet hair leaving the bathroom. **See id.** at 196-97.

Geyer testified that the Sig Sauer firearm that had been recovered was in her name, but that Sisler used it. **See** N.T. Trial, 8/19/19, at 167. Sisler kept the gun in a basket in the coffee table by the couch on which he slept. Geyer stated that Sisler would "dry" fire the gun at their pet cats if he got mad at them. **Id.** at 168. She also explained that he would shoot the gun at the shooting range which they would visit. **See id.** at 169. Sergeant Charles Fino, a firearms expert, tested the firearm and concluded that it was fully functional. **See id.** at 238.

Sisler testified in his own defense at trial. He said that he was in the hospital from September 9 through 12, 2018, related to treatment for end-stage renal failure. Therefore, he claimed he could not have assaulted C.S. on that Tuesday or Wednesday like she told investigators. *See* N.T. Trial, 8/21/19, at 15-16. He also denied having assaulted C.S. or taking photos or videos of her in which she was scantily clad. *See id.* at 35. Rather, he claimed that he used the threat of video recording as a deterrent to keep C.S. from walking out of the bathroom in a towel. *See id.* at 41, 45.

Sisler denied having ever used the firearm and claimed it was solely for Geyer's use. *See id.* at 38. He also denied ever having been to the gun range with the firearm. *See id.* at 86-87.

Following Sisler's testimony, the prosecutor introduced a video clip from Geyer's phone of Sisler at the shooting range teaching his mother how to shoot the Sig Sauer firearm as rebuttal evidence. Sisler objected to admission of the video because it was not provided with discovery in the case. The prosecutor explained that he had only received the video five minutes earlier and the video only became relevant when Sisler testified that he was never at the gun range. The court overruled the objection. *See id.* at 124-28.

On August 21, 2019, at the conclusion of trial, the jury found Sisler guilty of all charges. The court ordered an assessment of Sisler by the Sexual Offenders Assessment Board ("SOAB"), and scheduled sentencing for October 31, 2019. Sentencing was continued at the request of the Commonwealth until December 17, 2019. On December 15, 2019, Sisler filed a motion to dismiss

for a violation of his right to speedy sentencing pursuant to Pa.R.Crim.P. 704(a)(1). On December 17, 2019, Sisler filed a motion to continue sentencing, which the trial court granted.

On January 2, 2020, the court conducted a sentencing hearing. At the start of the hearing the court denied Sisler's motion to dismiss. It then sentenced him to 63½ to 127 years of incarceration. The court informed Sisler that as a Tier 3 sexual offender he is subject to the lifetime registration and reporting requirements of SORNA. It did not find him to be an SVP. Sisler filed a post-sentence motion, which the court denied. This timely appeal followed.

Sisler raises eleven issues on appeal.

1. [Whether Sisler's] conviction for Rape by Causing Impairment, Rape of a Child, Statutory Sexual Assault, and Incest, were against the weight of the evidence[?]

2. [Whether Sisler's convictions for Aggravated Indecent Assault of a Person Under 16, Aggravated Indecent Assault of a Child, Endangering the Welfare of a Child, and Corrupting the Morals of a Minor are against the weight of the evidence?][2]

3. Whether [Sisler's] conviction for Unauthorized Use of an Intoxicant was against the weight of the evidence, where there was no evidence presented that [Sisler] drugged the Complainant?

4. Whether [Sisler's] convictions for Sexual Abuse of a Minor and Sexual Abuse of a Minor-Possession of a Depiction of a Prohibited Sexual Act were against the weight of the evidence,

_____

[2] Although included in his post-sentence motion, concise statement of errors complained of on appeal, and argued in a separate section within the argument section of his brief, Sisler appears to have omitted this question from his statement of questions. *See* Sisler's Br. at 8, 48-51. Because Sisler clearly and consistently sought to raise this issue, we have addressed it.

where the video depicting the Complainant does not show her nude or engaged in a prohibited sexual act?

5. Whether [Sisler's] conviction for Person Not to Possess Firearm was against the weight of the evidence where the firearm in question was purchased, owned by and registered to [Sisler's] wife?

6. Whether the trial court abused its discretion in admitting rebuttal evidence consisting of [Sisler] instructing his mother how to shoot a firearm owned by his wife, which was not provided to the defense until after [Sisler] had testified at trial that he never possessed his wife's firearm, and therefore could not be found guilty of Possession of a Firearm by a Person Prohibited, 18 Pa.C.S.A. Section 6105, which violated [Sisler's] right to mandatory discovery under Pa.R.Crim.P. 573 and prejudiced his right to a fair trial?

7. Whether the trial court abused its discretion in denying [Sisler's] motion *in limine* to preclude salacious nude photographs of his wife that were downloaded on his laptop?

8. Whether the trial court abused its discretion in admitting into evidence, photograph of an unidentified female's nude breast, whose face was not depicted in the picture, as such evidence had zero probative value, but was highly prejudicial and inflammatory?

9. Whether the trial court abused its discretion in denying [Sisler's] motion to dismiss for violation of his right to a speedy sentencing, pursuant to Pa.R.Crim.P. 704?

10. Whether the [lifetime] registration requirement imposed by the trial court pursuant to the Pennsylvania Sexual Offender's Registration Act, "SORNA," is unconstitutional and should be set aside, where SORNA violates the fundamental right to reputation under the Pennsylvania State Constitution, as well as federal guarantees of procedural due process under the Fifth, Sixth, and Fourteenth Amendments?

11. Whether the sentencing court erred as a matter of law, abused its discretion, violated the fundamental norms of sentencing and specific provisions of the sentencing code, to wit, 42 Pa.C.S.A. Section 9721(b), which requires that any sentence imposed be consistent with the protection of the public, the gravity of the offense and the rehabilitative needs

of [Sisler] where the sentence imposed of [67½ to 135] years was grossly disproportionate to the force of the evidence, and, therefore, manifestly excessive and unreasonable, far surpasses what is required to protect the public, the complainant and the community, as well as foster [Sisler's] rehabilitation, and, finally, egregiously relied on an impermissible factor, an SVP assessment, wherein [Sisler] had not been interviewed by the psychologist, which the Pennsylvania Supreme Court has held to be unconstitutional?

Sisler's Br. at 7-10 (renumbered for ease of disposition, some formatting altered, some argument omitted).

Before we address the merits of the issues raised, we must determine whether, as the trial court suggests, Sisler waived his first five claims, all of which claimed that the weight of the evidence was against his convictions. In its opinion denying Sisler's post-sentence motion, the trial court found that Sisler waived all his claims challenging the weight of the evidence because he did not pay for transcription of the trial, did not request the notes and testimony which the Commonwealth paid to transcribe, and did not cite to any testimony from the transcripts of testimony that had been filed. **See** Trial Ct. Op., 6/2/20, at 5.

On July 24, 2020, the trial court granted Sisler's request for transcription of the notes and testimony from trial and sentencing. The request had accompanied his notice of appeal.[3] The certified record reflects that the trial

---

[3] Sisler filed his notice of appeal together with a praecipe to proceed *in forma pauperis*. After a hearing, the court granted Sisler's motion for the purposes of appeal and subsequent proceedings. The court thereafter granted the request for transcripts noting that the costs would be borne by the court administration.

and sentencing had been transcribed, and copies of the notes and testimony had been delivered. However, the certified record submitted to this Court on appeal contains only one day's worth of trial testimony.[4]

"This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa.Super. 2006) (citations omitted). "As an appellate court, we are limited to considering only those facts that have been duly certified in the record on appeal." ***Commonwealth v. Spotz***, 18 A.3d 244, 323 (Pa. 2011) (citation omitted). "In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted." ***Preston***, 904 A.2d at 7. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." ***Id.***

Instantly, Sisler failed to ensure that the certified record contained all the materials necessary for this Court to address his claims. However, despite it not being our responsibility to do so, this Court obtained copies of the trial and sentencing transcripts, which had been filed in the trial court. Additionally, in his appellate brief before this Court, Sisler has included citation to the transcripts in support of his argument. Therefore, we do not find that Sisler

---

[4] The record contained the notes and testimony of August 20, 2019, which the Commonwealth had requested and paid for transcription for the SOAB's use.

has waived his challenges to the weight of the evidence, and we will address those claims on the merits.[5]

**Weight of Evidence**

A weight claim is for the trial court in the first instance. *See Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016). The trial court may sustain a weight challenge and grant a new trial only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (quoting *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999)). We review the trial court's rejection of a challenge to the weight of the evidence for an abuse of discretion. *See Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017).

_____

[5] In its opinion denying Sisler's post-sentence motion the trial court explained that while Sisler styled his challenge as a weight claim, portions of his argument could be read as challenging the sufficiency of the evidence. Therefore, the court briefly addressed the sufficiency of the evidence along with the weight claim. In his appeal before this Court Sisler did not amend his questions presented to include a sufficiency challenge, nor did he add any legal standards concerning sufficiency. Therefore, we conclude that he does not intend to challenge the sufficiency of the evidence underlying his conviction and instantly we will only address his arguments concerning the weight of the evidence.

In his first three claims, Sisler argues that the weight of the evidence was against his convictions for Rape by Causing Impairment, Rape of a Child, Statutory Sexual Assault, Aggravated Indecent Assault of a Person Under 16, Aggravated Indecent Assault of a Child, Endangering the Welfare of a Child, Corrupting the Morals of a Minor, and Unauthorized Use of an Intoxicant. Sisler argues that the testimony of the victim, C.S., which the prosecution used to establish these offenses, was incredible. He claims that on the day of his arrest, C.S. first alleged the abuse to have occurred on a date when he was in the hospital. He asserts that C.S.'s later expansion of her claims was inconsistent as to the nature of the sexual contact and did not contain any specificity about the circumstances of the events. Sisler further contends that there was no physical evidence of sexual abuse. Finally he claims that although he had been prescribed Zolpidem, there was no credible evidence presented that he gave it to C.S. *See* Sisler's Br. at 45-47, 50-53.

In his fourth issue, Sisler argues that the weight of the evidence is against the convictions for Sexual Abuse of a Minor and Sexual Abuse of a Minor-Possession of a Depiction of a Prohibited Sexual Act because C.S. is not nude in either the photos or the video. Sisler asserts that because the face of the partially nude woman is not in the picture, there is no way to identify it as C.S. *See id.* at 54-55.

Finally, in his fifth issue Sisler challenges his conviction for Persons Not to Possess a Firearm as against the weight of the evidence. He argues that the Sig Sauer firearm found by detectives at his house was owned and

registered to Geyer and there was no credible evidence that he ever possessed it. He contends that the video showing him teaching his mother how to use the firearm never actually depicted him in possession. Sisler claims that testimony that he would rack the firearm to scare the cats clearly lacked credibility because as a cat lover he would not use an actual firearm to scare cats. *See id.* at 55-56.

The trial court reviewed the evidence for each conviction, noted that the jury was free to determine the credibility of the witnesses, and concluded that the verdict was not against the weight of the evidence. *See* Trial Ct. Op., 6/2/20, at 9-11. We find no abuse of discretion in the trial court's conclusion and its rejection of Sisler's weight claims. We therefore affirm on the basis of the trial court opinion, which we adopt and incorporate herein. *See id.*

**ADMISSIBILITY OF EVIDENCE**

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014). We give deference to the trial court's decisions regarding the admissibility of evidence. *See id.* An abuse of discretion is a ruling where there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 10 (citation omitted).

**Gun Range Video**

In his sixth issue, Sisler claims that the trial court abused its discretion when it admitted rebuttal evidence of the video of him at the gun range with his mother. He contends that admission of the video violated his right to mandatory discovery under Pa.R.Crim.P. 573(B)(1) and his right to a fair trial because it was not provided to the defense. He asserts that the Commonwealth's claim that Geyer did not reveal the existence of the videotape until after Sisler had testified was not believable. *See* Sisler's Br. at 57-60.

In response, the Commonwealth asserts that it "was not aware of the video prior and did not have the evidence in its possession until Ms. [Geyer] approached the [prosecutor] after [Sisler] testified untruthfully." Commonwealth's Br. at 18.

In criminal cases, the Commonwealth must abide by the mandatory disclosure rules set forth in Rule 573(B)(1), which states:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

Pa.R.Crim.P. 573(B)(1)(f). "The Commonwealth does not violate Rule 573 when it fails to disclose to the defense evidence that it does not possess and of which it is unaware." **Commonwealth v. Collins**, 957 A.2d 237, 253 (Pa. 2008) (citation omitted).

At trial, after Sisler testified, the Prosecutor stated that it intended to recall Geyer in rebuttal to introduce a short video clip from her phone, showing Sisler at the shooting range helping his mother shoot the firearm. **See** N.T. Trial, 8/21/19, at 124. After Sisler objected because the evidence was not provided in discovery, the prosecutor stated that he "just got it [himself] almost maybe five minutes ago." **Id.** at 126. Geyer testified similarly that she had just pulled up the video and provided it to the prosecutor during the recent break. **See id.** The trial court overruled the objection and admitted the video.

The trial court did not abuse its discretion in admitting the video evidence. Discovery Rule 573 only mandates that the Commonwealth disclose tangible evidence that is in its possession. **See Collins**, 957 A.2d at 253; **see also** Pa.R.Crim.P. 573(B)(1). Here, the court was free to believe that the prosecutor only came into possession of the video during the recent break, and therefore, had not violated the mandatory discovery disclosure requirements. Accordingly, this issue has no merit.

**Photographs of Geyer**

In his seventh issue, Sisler claims that the trial court erred in denying his motion *in limine* to exclude nude photographs of Geyer that had been extracted from his devices. He asserts that the photos had no relevance to

the instant case and argues that they were admitted solely to inflame the jury. Accordingly, he contends that the unfair prejudice from the photos outweighed their probative value and the court abused its discretion in admitting them. *See* Sisler's Br. at 60-61.

Both the Commonwealth and the trial court assert that Sisler did not properly preserve this issue for review. They both argue that although Sisler filed a motion *in limine* seeking to preclude the photos, and the trial court denied the motion, it did not do so on the merits. *See* Commonwealth's Br. at 19; 1925(a) Op. at 12-13. Instead, the court left open a final decision on the evidence, explaining that "the ultimate assessment of prejudicial impact versus probative value will be made at the time of trial." Trial Ct. Order, 8/6/19. Therefore, they claim that the motion *in limine* did not preserve the objection, and because Sisler did not object when the Commonwealth moved for admission of the photographs, he did not preserve this challenge.[6] *See* Commonwealth's Br. at 19; 1925(a) Op., 8/26/20, at 12-13.

In order to preserve an issue for our consideration, a party must make a timely and specific objection at trial. *See Commonwealth v. McGriff*, 160 A.3d 863, 866 (Pa.Super. 2017); Pa.R.A.P. 302(a). "[A] motion *in limine* may preserve an objection for appeal without any need to renew the objection at

---

[6] Sisler did not object after the Commonwealth moved to admit the photographs. *See* N.T. Trial, 8/20/19, at 151-52. He objected when the Commonwealth sought to publish some photos to the jury, but on the limited grounds that the photos had not been authenticated. *See id.* at 153. After Geyer authenticated the photographs, the Commonwealth published select images to the jury and Sisler did not object. *See id.* at 187.

trial, but only if the trial court clearly and definitively rules on the motion." **McGriff**, 160 A.3d at 866 (citation omitted).

Here, the trial court did not clearly and definitively rule on the merits of Sisler's motion to exclude photographs of Geyer. The motion *in limine* therefore did not preserve the issue. Because Sisler did not later object to the admission of the photographs at trial, he waived this issue for appeal. **See id.**

Moreover, even if properly preserved, we would conclude that the trial court did not abuse its discretion. The photographs were properly admissible under Rule of Evidence 404(b)(2) to demonstrate opportunity and intent. The images showed that Sisler had photographed Geyer partially nude without her permission, just has he had captured photos of C.S. partially nude without her permission. **See** Pa.R.E. 404(b)(2) (evidence of other crimes, wrongs, or other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Furthermore, we do not believe any error in admitting the photos prejudiced Sisler, in view of the extensive evidence of his crimes. As such, it was not an abuse of discretion for the court to admit the photos of Geyer.

**Photograph of Nude Breast**

In his final evidentiary challenge, Sisler claims that the trial court abused its discretion by admitting a photograph of an unidentified female's nude breast. He argues that because the face of the person was not depicted in the

picture, such evidence had no probative value, and was highly prejudicial and inflammatory. *See* Sisler's Br. at 62.

"Admission of evidence . . . rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury." *Commonwealth v. Brown*, 212 A.3d 1076, 1086 (Pa.Super. 2019), *appeal denied*, 221 A.3d 643 (Pa. 2019) (citation omitted). A trial court may exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice. *See* Pa.R.E. 403.

Here, the trial court's admission of the photo of the nude breast was not an abuse of discretion. As the court explained:

> [Sisler] was charged with, among other things, two different form[s] of Sexual Abuse of Children: creation of child pornography and possession of child pornography. The photograph that [Sisler] is referring to was shown as a part of series of photographs (and a video) found on [Sisler's] electronic devices that depicted his daughter partially nude or in compromising positions. Although the subject's face was not shown, and contrary to [Sisler's] baseless supposition, [] Geyer unequivocally identified the person depicted in the photo as her daughter, the victim in this case. (N.T., 8/20/2019, pp. 190). Since at all pertinent times her daughter was a child between 7 and 14 years-old, the photograph was clearly relevant to the child pornography charges. Further [Sisler's] bald assertion that [] Geyer, who had cared for her daughter for 15 years could not identify her child's body is made of whole cloth and, in any event, goes to the weight not the admissibility of the challenged photograph.
>
> Simply, the photograph was highly relevant and its probative value far outweighed its prejudicial effect. [Sisler's] claim that the photograph was irrelevant could not be authenticated, and was inadmissible is specious.

- 20 -

1925(a) Op., at 18-19.

We agree that the photograph was highly relevant, and its probative value outweighed its prejudicial effect. Therefore, the trial court did not abuse its discretion in admitting the photo.

**SPEEDY SENTENCING VIOLATION**

Next, Sisler claims that the trial court erred when it denied his motion to dismiss for a violation of his right to a speedy sentencing. He argues that he was sentenced 137 days after his conviction, which was 47 days beyond the 90-day deadline set forth in Pa.R.Crim.P. 704(a)(1). **See** Sisler's Br. at 63-64.

Rule 704 provides in pertinent part:

> **A) Time for Sentencing.**
>
> (1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*.
>
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 704(a)(1)-(2).

This Court has explained that a violation of this rule does not automatically result in discharge of the defendant. Rather, the defendant must show prejudice:

> The appropriate remedy for a violation of [Pa.R.Crim.P. 704], is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than [90] days after

conviction without good cause. Instead, a violation of the [90-day] rule is only the first step toward determining whether the remedy of discharge is appropriate.

* * *

[A] defendant who is sentenced in violation of [Pa.R.Crim.P. 704], is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her.... [T]o determine whether discharge is appropriate, the trial court should consider:

(1) the length of the delay falling outside of [the Pa.R.Crim.P. 90–day–and–good–cause provisions]; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Diaz*, 51 A.3d 884, 887 (Pa.Super. 2012) (quoting

*Commonwealth v. Anders*, 725 A.2d 170, 172-73 (Pa. 1999)).

At sentencing, the court heard argument on Sisler's motion to dismiss. It then explained the relevant timeframes in this matter. The court accepted the jury's verdict on August 21, 2019, and scheduled sentencing for October 31, 2019. The Commonwealth then filed a motion for a continuance because the prosecutor was attached to trial in a capital case and because the SOAB had not yet rendered its report. The court found that both reasons were valid and granted the Commonwealth additional time, rescheduling the sentencing for December 17, 2019, the earliest date the court could accommodate. The court explained that it did not count towards the delay the time from

December 17 onward when it granted defense counsel's motion for a continuance because he had the flu. **See** N.T. Sentencing, 1/2/20, at 11-14.

Sisler's argument at sentencing regarding prejudice was minimal. He claimed that he was prejudiced by the delay because he received dialysis treatments for his kidney disease and was having to receive those treatments in jail. After confirming that Sisler had been receiving the required treatments, the court concluded that Sisler was not prejudiced by the delay and denied the motion to dismiss. **See id.** at 14.

We agree that Sisler did not demonstrate that he was prejudiced by the delay. Accordingly, the trial court did not err when it denied Sisler's motion to dismiss. **See Diaz**, 51 A.3d at 887.

**DISCRETIONARY ASPECT OF SENTENCE**

Next, Sisler challenges the discretionary aspects of his sentence. We review a challenge to the discretionary aspects of sentence for an abuse of discretion. **See Commonwealth v. Smith**, 206 A.3d 551, 567 (Pa.Super. 2019). Before we address the merits of such a challenge, we must determine whether: 1) the appellant preserved the issue; 2) the appeal is timely; 3) the brief includes a Pa.R.A.P. 2119(f) statement; and 4) the appellant has raised a substantial question. **See Commonwealth v. Spenny**, 128 A.3d 234, 241 (Pa.Super. 2015). Here, Sisler preserved the issue in his post-sentence motion, filed a timely appeal, and his brief includes a Rule 2119(f) statement. Therefore, we must consider whether he raised a substantial question.

"A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." **Commonwealth v. Conte**, 198 A.3d 1169, 1174 (Pa.Super. 2018) (citation omitted).

In his Rule 2119(f) statement, Sisler alleges that he raises a substantial question because the trial court relied on an impermissible factor, namely the SOAB assessment, and imposed an excessive sentence that "solely reflected the gravity of the offenses," and was grossly disproportionate. Sisler's Br. at 35. This states a substantial question. **See Commonwealth v. Williams**, 69 A.3d 735, 740 (Pa.Super. 2013); **Commonwealth v. Bricker**, 41 A.3d 872, 875 (Pa.Super. 2012) **Commonwealth v. McNabb**, 819 A.2d 54, 56-57 (Pa.Super. 2003).

However, his claim lacks substantive merit. To support his claims that the sentence was excessive and disproportionate, Sisler gives a recitation of the evidence in a light favorable to himself and maintains his innocence. He then argues that the SOAB report was flawed because Sisler had not sat for an interview, depriving the report's author of a factual basis for the report's conclusions. He also maintains that the court could not have disregarded the report's labeling him an SVP.

We do not think the court abused its discretion in imposing sentence. The court properly reviewed the evidence and enumerated multiple factors supporting the sentence it fashioned. Sisler provides no legal authority for his

claim that the sentencing court's consideration of an SOAB assessment constitutes an impermissible consideration. To the contrary, to determine the appropriate sentence, the court may properly consider any evidence it deems relevant, including hearsay. *See Commonwealth v. King*, 182 A.3d 449, 455 (Pa.Super. 2018); *Commonwealth v. Medley*, 725 A.2d 1225, 1229 (Pa.Super. 1999). Sisler's sentencing challenge lacks merit.

**CONSTITUTIONALITY OF SORNA**

Finally, Sisler claims that the lifetime registration requirement imposed by the trial court pursuant to SORNA is unconstitutional.[7] He argues that the registration requirement violates his right to reputation because his registration as a sex offender creates a stigma that he is a dangerous adult who is likely to commit further sexual offenses. He asserts that as a Tier III offender based on his offenses, he will not have an opportunity to challenge this designation or demonstrate that he has been rehabilitated. Sisler alleges that he does not have a high risk of recidivism because although he had a prior conviction for burglary, he had no history of sexual offenses and he argues the allegations against him are "utterly without merit, if no[t] ridiculous." Sisler's Br. at 69. Accordingly, he claims that SORNA's provision that sexual offenders pose a high risk of recidivism is an irrebuttable

---

[7] Although Sisler refers in the questions presented and argument portion of his brief to a 15-year registration period, a review of the record reflects that the trial court imposed lifetime registration, as required by SORNA for Tier III offenders. *See* N.T. Sentencing, 2/2/20, at 22.

- 25 -

presumption that violates his constitutional right to reputation. *See id.* at 65-70.

In denying Sisler's post-sentence motion the trial court noted that our Supreme Court's then-still-pending decision in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020), would control. *See* Trial Ct. Op., 6/2/20, at 20.

A brief history of the holding in *Torsilieri* is helpful in this case. Torsilieri challenged his registration requirements arguing that Subchapter H violates his due process rights because it imposes lifetime registration requirements based on an unconstitutional irrebuttable presumption of dangerousness. The trial court held that Subchapter H was unconstitutional, and the Commonwealth appealed directly to our Supreme Court. Our Supreme Court considered whether Subchapter H violated due process based on an irrebuttable presumption of future dangerousness and it considered based on the factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), whether the statute was punitive despite the legislature's stated non-punitive purpose. Our Supreme Court ultimately determined that the factual record was insufficient to render a decision on the merits and remanded to the trial court for future development of the record. *See Torsilieri*, 232 A.3d at 596.

Here, Sisler preserved his Subchapter H claim by raising it before the trial court. However, the trial court did not conduct a hearing concerning Sisler's potential for future dangerousness and recidivism. Hence, there is no factual record on which we can evaluate Sisler's Subchapter H claims. Where

"there is no factual record" for us to decide a *Torsilieri* claim, under this Court's precedents, "we vacate and remand for a hearing at which the parties can present evidence" in support of their respective positions. *Commonwealth v. Asher*, 244 A.3d 27, 33 (Pa.Super. 2020). We therefore respectfully disagree with the dissent and conclude, pursuant to *Asher*, that a remand is in order. We vacate Sisler's registration requirements and remand in accordance with *Torsilieri* for evidentiary proceedings on whether SORNA creates a facially unconstitutional irrebuttable presumption against sexual offenders.

Judgment of sentence affirmed. Order denying post-sentence motion vacated only as to whether SORNA creates a facially unconstitutional irrebuttable presumption against sexual offenders. Case remanded for proceedings consistent with *Torsilieri*. Jurisdiction relinquished.

President Judge Emeritus Bender joins the memorandum.

President Judge Emeritus Stevens files a dissenting statement.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/21

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, : | No. 2177 CRIMINAL 2018 |
| **Plaintiff** : | |
| v. : | APPEAL No. 1288 EDA 2020 |
| MATTHEW SISLER, : | |
| **Defendant-Appellant** : | |

### OPINION PURSUANT TO Pa.R.A.P. 1925(a)

Following the denial of his post-sentence motions, Defendant-Appellant, Matthew Sisler, filed an appeal from the judgment of sentence entered on January 2, 2020, after a jury convicted him of multiple felony sex offenses and related crimes against his daughter, drugging her to accomplish the offenses, and other crimes. On receipt, we directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied, and we now file this opinion in accordance with Pa.R.A.P. 1925(a). For the reasons that follow, we believe the judgment of sentence should be affirmed in that Appellant has waived or may have waived one of his appeal issues and his assignments of error lack merit.

### BACKGROUND

Appellant was arrested and charged with Rape by Impairment, Rape of a Child, Statutory Sexual Assault, Aggravated Indecent Assault of a Person Under 16, Aggravated Indecent Assault of a Child, Incest, Endangering the Welfare of a Child, Corruption of a Minor, Unlawful Contact with a Minor, Unauthorized Use of Intoxicant, two counts of Sexual Abuse of a Minor (Creating Child Pornography and Possession of Child Pornography), and Person not to Possess a Firearm. The convictions were based

1

on Defendant's sexual abuse of his daughter for seven years beginning when she was seven years old and possession of a gun despite being a felon who was prohibited from possessing the weapon.

Appellant filed an Omnibus Pre-trial Motion seeking suppression of any "salacious videos and photos" contained in his cellphone. (Appellant's Motion, filed January 4, 2019). A hearing on the motion was held on March 4, 2019. At the hearing, Appellant withdrew his suppression motion.

On July 25, 2019, the Commonwealth filed a motion *in limine* seeking to introduce evidence of nude photographs it claimed Appellant surreptitiously took of Jennifer Geyer, his live-in girlfriend and mother of the victim, without her knowledge or consent. In response, Appellant filed a Motion *in limine* seeking to exclude, among other things, the nude photos.

A hearing on the motions *in limine* was held on August 6, 2019. At that time, we declined to rule, pre-trial and as a matter of law, that the photographs were inadmissible. In accordance with the holding and rationale of our Supreme Court in *Commonwealth v. Hicks*, 91 A.3d 47 (Pa. 2014), we reserved ruling on the photographs until the time of trial when the probative value vs. prejudice balancing test could properly be conducted.

On August 21, 2019, after a multi-day jury trial, Appellant was convicted of all crimes charged. In the order accepting the verdict, we scheduled a sentencing hearing, instructed our Probation Department to conduct a Pre-Sentence Investigation ("PSI"), and, pursuant to 42 Pa. C.S.A. 9799.24, directed the Pennsylvania Sexual Offenders Assessment Board ("SOAB") to conduct an assessment of Defendant to determine whether he should be classified as a Sexually Violent Predator ("SVP"). The PSI report

2

and SVP report were submitted to the Court and made available to counsel for both parties prior to sentencing.

The original sentencing date was continued twice. Initially, the Commonwealth asked for and was granted a continuance because SOAB had not completed the SVP report and the assistant district attorney ("ADA") who had tried Appellant was attached to a homicide trial. That request was granted and, after consideration of the statutory period SOAB had to complete the SVP report and the Court's calendar, sentencing was rescheduled for December 17, 2019, a date 118 days after Appellant was found guilty.

On December 15, 2019, Appellant filed a Motion to Dismiss for violation of his "right to Speedy Sentencing Pursuant to Pa. R.Crim.P. 704(a)(1)" because the continued sentencing date was more than 90 days after his conviction. The next day, Appellant filed a separate pre-sentence motion challenging the constitutionality of SORNA.

On December 17, 2019, the date of the continued sentencing hearing, Appellant requested a continuance because his counsel had the flu. That motion was granted and sentencing was rescheduled for January 2, 2020.

There were no further continuances and the sentencing hearing was convened on January 2, 2020. Before sentence was imposed, we heard argument and ruled on both of Appellant's pre-sentence motions. (N.T., 1/2/2020, pp. 6-16). Specifically, we dismissed the challenge to SORNA and denied the motion to dismiss. We briefly summarized our reasoning on the record. (*Id.* at 10-16). Thereafter, defense counsel argued for a mitigated range sentence, Appellant elected not to address the Court, letters written by Appellant's daughter and Ms. Geyer, both of whom were present, were read, and the ADA asked for an aggravated range sentence. At the end of the hearing,

3

we sentenced Appellant to an aggregate of 63.5 to 127 years' incarceration. In addition, Appellant was classified as a Tier 3 Offender and directed to comply with the registration, reporting, and other requirements of SORNA. We summarized or reasons for the sentence on the record. (*Id.* at 51-69; Judgment of Sentence, entered January 2, 2020).

Appellant timely filed Post-Sentence Motions and a Memorandum of Law in support of the motions. On June 2, 2020, we issued an opinion and order (the "Prior Opinion") denying the motions. The Prior Opinion provides additional relevant history, identifies the record on which the decision was based, and fully explains the reasons why the motions were denied. We incorporate the Prior Opinion into this Opinion by reference. For convenience and ease of reference, a copy of the Prior Opinion is attached as Appendix A.

Subsequently, Appellant filed this appeal.

## DISCUSSION

Defendant filed a statement and supplemental statement pursuant to Pa. R.A.P. 1925(b) raising a total of ten assignments of error. None have merit.

1.  <u>First Seven Assignments of Error -- Reiteration of Issues Raised in Post-Sentence Motions</u>

The first seven assignments of error raised by Appellant on appeal reiterate verbatim the issues raised in his Post-Sentence Motions. The assignments lifted from the Post-Sentence Motions challenge the discretionary aspects of Appellant's sentence, assert that the verdict was against the weight of the evidence, and contend that SORNA is unconstitutional. These challenges and assertions are without merit for the reasons

4

stated in the Prior Opinion. As to these assignments of error, nothing further needs to be determined at this time.[1]

    2.    <u>Speedy Sentencing Challenge</u>

In his eleventh assignment of error, Appellant contends that we abused our discretion by denying his request for dismissal based on the fact that he was not sentenced within 90 days of the date of his conviction as required by Pa. R.Crim.P. 704. This, too, lacks merit.

Rule 704 provides, in pertinent part, as follows:

> **(A) Time for Sentencing.**
>
> (1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*.
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

With regard to claims of untimely sentencing, our Superior Court has explained:

> The appropriate remedy for a violation of Pa. R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than [ninety] days after conviction without good cause. Instead, a violation of the [ninety-day] rule is only the first step toward determining whether the remedy of discharge is appropriate.
>
>                 \* \* \*

---

[1] One of the post-sentence motions we denied was Appellant's challenge to the constitutionality of SORNA. The reasons we denied Appellant's challenge are the same as the reasons why we denied identical challenges raised in other analogous cases. In one such other case, *Commonwealth v. Torres*, No. 266 EDA (Pa. Super., filed August 7, 2020), the Superior Court addressed all other issues, but vacated the portion of the judgement of sentence that classified the defendant as sex offender who was required to register under SORNA and remanded for a hearing on the constitutionality of SORNA in accordance with our Supreme Court's recent decision in *Commonwealth v Torsilieri*, ___ A.3d ___, 2020 WL 3241625 (Pa., filed June 16, 2020). Due to the pendency of this appeal, we currently lack jurisdiction to hold such a hearing at this time. If the constitutionality of SORNA is not decided before the other issues in this case are addressed, and the remand procedure of *Torres* will be followed, we stand ready to decide Appellant's challenge again with the benefit of *Torsilieri* and other then-applicable precedents.

[A] defendant who is sentenced in violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her.... [T]o determine whether discharge is appropriate, the trial court should consider: (1) the length of the delay falling outside of [the Pa.R.Crim.P. [90–day–and–good–cause provisions]; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Diaz*, 51 A.3d 884, 887 (Pa. Super. 2012) (quoting *Commonwealth v. Anders*, 725 A.2d 170, 172–73 (Pa. 1999) (footnotes and internal citations omitted; brackets added in the original)). Additionally, "Rule 704 [is not] aimed at addressing or eliminating clerical error. Protecting the accused from *inexcusable or intentional delay* on the part of the court or the Commonwealth, *the 'whim' or power of the state*, is the underpinning of the right to a speedy trial." *Id.* at 889 (quoting *Commonwealth v. McLean,* 869 A.2d 537, 539 (Pa. Super. 2005) (emphasis added)).

In this case, Appellant's speedy sentencing challenge essentially re-asserts the motion he made prior to sentencing. Our reasons for denying that motion, including our time calculations and the law we applied, were explained in on the record during the sentencing hearing (N.T. 1/2/2020, pp. 10-16). As part of our explanation, we referenced our prior decision in *Commonwealth v. Romero*, No. 1534 CRIMINAL 2017, pp. 12-18 (C.P. Monroe, filed 10/29/2019) (Mark, J.), a case in which we denied a virtually identical motion filed by the same defense attorney. For convenience and ease of reference, a copy of the *Romero* Opinion is attached as Appendix B. Our on-record

6

comments and the law and rationale discussed in *Romero* suffice to dispel Appellant's speedy sentencing argument. In summary:

The delay outside the 90 day time frame of Rule 704 was minimal. It was only 28 days. The reasons for the delay – the ADA's homicide trial attachment and SOAB's need for additional time to complete the SVP assessment report – were legitimate and reasonable. In this regard, some of the delay in rescheduling was due to the Court's calendar. Finally, and significantly, Appellant neither specifically pled nor established prejudice. Accordingly, his speedy sentencing argument is bootless.

3. <u>Challenges to Evidentiary Rulings</u>

In assignments of error eight, nine, and ten, Appellant takes issue with evidentiary decisions made before and during trial. However, none of the challenged rulings constituted error or an abuse of discretion.

It is firmly established that,

> "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel*, 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). An abuse of discretion requires:
>
> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
>
> *Commonwealth v. Widmer*, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

*Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1237 (Pa. 2005).

7

The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. "In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact." *Commonwealth v. Antidormi*, 84 A.3d 736, 750 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (internal citations and quotation marks omitted).

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403. Trial judges have authority to oversee the presentation of evidence so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom. *Commonwealth v. Bryant*, 67 A.3d 716 (Pa. 2013). "Unfair prejudice" means a tendency to suggest decision on an improper basis or to divert the jury's attention away for its duty of weighing the evidence impartially. Comment to Pa.R.E. 402.

Evidence will not be prohibited as unduly prejudicial merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than legal propositions relevant to the case. *See Commonwealth v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014). In this regard, courts are not required to sanitize trials to eliminate all unpleasant facts from the

8

jury's consideration where those facts are relevant to the issues at hand. *See Commonwealth v. Hairston*, 84 A.3d 657 (Pa. 2014).

a) *Rebuttal Evidence*

Appellant asserts that we erred by admitting rebuttal evidence of a video which consists of Appellant instructing his mother how to shoot a firearm at a shooting range. This assertion is bootless. The events that unfolded at trial presented a classic case for rebuttal evidence of the type we allowed.

Rebuttal evidence is defined in Black's Law Dictionary (5th ed.1979) as "[e]vidence given to explain, repel, counteract, or disprove facts [as opposed to opinions] given in evidence by the adverse party." *Commonwealth v. Yale*, 150 A.3d 979, 982 (Pa. Super. 2016). A trial court may properly exclude evidence offered on rebuttal if it is cumulative of evidence already presented. *Id.* (quoting *Daddona v. Thind*, 891 A.2d 786 (Pa. Cmwlth. 2006) (footnotes and internal citations omitted). Repetitive testimony is improper rebuttal. *Id.* However, it is not grounds for reversal that the trial court permitted the Commonwealth to present evidence on rebuttal that could have been presented in its case in chief. *Commonwealth v. Hickman*, 309 A.2d 564 (Pa. 1973). *See also Commonwealth v. Koch*, 288 A.2d 791 (Pa. 1972).

Our Supreme Court has repeatedly held that

> the order of presentation of evidence is a matter which is largely within the discretion of the trial judge. The introduction of evidence by the Commonwealth, after the defense rests its case, which could have been offered by the Commonwealth during its case in chief is not necessarily grounds for reversal. Evidence is admissible in rebuttal to contradict that offered by defendant or his witnesses, even though by doing so the Commonwealth supplies fatal defects in its case in chief. In addition, a party may produce evidence to rebut testimony which he himself elicited from his opponent's witness on cross-examination.

9

*Commonwealth v. Hickman, supra; Commonwealth v. Barnett*, 50 A.3d 176, 190 (Pa. Super. 2012) (citations and quotation marks omitted and brackets added in the original).

Further, a defendant may not present false or misleading evidence or create a false impression of his character or record, without expecting a challenge or rebuttal from the Commonwealth. *Commonwealth v. Ballard*, 80 A.3d 380 (Pa. 2013) (citations and quotation marks omitted). Where the rebuttal evidence goes to the impeachment of the offering party's opponent or opponent's witnesses, it is admissible as a matter of right. *Id.* The appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. *Id.*

Here, in addition to the sex offenses and related crimes, Defendant was charged with Person Not to Possess a Firearm. Appellant was precluded from possessing firearms because he was a felon. The firearm at issue was a pistol, observed within Appellant's reach under his cigarettes in his residence. During the Commonwealth's case in chief, evidence was presented that the gun was Appellant's. Ms. Geyer testified that, although the gun was registered in her name, Appellant was the one who asked her to purchase it. (N.T., 8/19/2019, pp. 167). Appellant always kept the gun by his side inside the house. (*Id.*). Specifically he would keep it on the coffee table next to the spot where he would sleep on the couch and dry fired the gun at the cats in their home. (*Id.*). Significantly, Ms. Geyer further testified that Appellant had held and used the gun at a shooting range he had visited with their daughter, his mother, and herself in order to teach Ms. Geyer and his mother how to use it. (*Id.* at 168-69).

Defendant elected to take the stand. During his testimony, Appellant claimed that he had never handled or shot the gun. (N.T., 8/21/2019, p. 76). In addition, he stated

10

that he had *never* been to the shooting range, nor had he gone to teach Ms. Geyer or his mother how to shoot the gun. (*Id.* at 86).

After Appellant made this statement and concluded giving testimony, Ms. Geyer informed the ADA that Appellant was not telling the truth. She had a video of Appellant at the shooting range showing his mother how to shoot the gun. (*Id.* at 125-127). On rebuttal, the Commonwealth recalled Ms. Geyer to authenticate the video and admit it into evidence. (*Id.*). Appellant noted an objection for the record. (*Id.*). The video clearly showed Appellant at the shooting range helping his mother use the gun, which contradicted his earlier statement. (*Id.*). After the video was published, Appellant took the stand on *sur* rebuttal and stated that, "hearing that [video] and remembering my mother coming down I remember going to the range and instructing them of how to use it." (*Id.* at 130).

Introduction of the video was neither error nor an abuse of discretion. As even this brief overview demonstrates, the video and Ms. Geyer's accompanying testimony was classic rebuttal in that it was presented to impeach and contradict Defendant's testimony. As to Appellant's discovery-based contention that he was not provided the video in advance of trial, as noted the Commonwealth was not aware of the video and did not have the evidence in its possession until Ms. Geyer approached the ADA after Appellant testified untruthfully. Further, the video was not exculpatory. In addition, introduction of the video during the Commonwealth's case in chief would have served little purpose as, standing alone, it contained little that was incriminating. However, it served a vital evidentiary purpose when used to impeach the Appellant's testimony that he had never been to that shooting range. Under these circumstances, the challenged

11

rebuttal evidence was admissible as of right and allowing the Commonwealth to play the video on rebuttal was proper.

b.  *Other Acts Evidence – Photographs of Ms. Geyer*

Appellant's next evidentiary challenge is that we erred by denying his motion *in limine* to exclude nude photographs of his girlfriend, extracted from his devices, which were highly prejudicial and inflammatory. Again, there was no error or abuse of discretion.

Initially, it is not clear that Appellant properly preserved this issue for review. As noted, before trial Appellant filed a motion *in limine* seeking to preclude the photos. In accordance with the teaching of our Supreme Court in *Hicks, supra*, we denied the motion to the "extent Defendant is asking the Court to rule as a matter of law that the evidence is inadmissible [...] the ultimate assessment of prejudicial impact versus probative value will be made at the time of trial." (Order dated August 6, 2019).

It is well settled that, in accordance with Pa.R.A.P. 302(a), a party must make a timely and specific objection at trial, and the failure to do so results in waiver of that issue on appeal. *Commonwealth v. McGriff,* 160 A.3d 863, 866 (Pa. Super. 2017). A motion *in limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. *Id* (quoting *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1232 (Pa. Super. 2011) (citations omitted).

At trial, the Commonwealth called the County Detective who conducted the forensic examination of Appellant's devices. During his testimony, the Detective testified that he extracted from Appellant's devices the challenged photographs and other images, including photographs of a minor female who was later identified as Appellant's

12

daughter. Despite knowing that we had left open a final decision on Appellant's challenge to the photographs/other acts evidence until time of trial, when the Commonwealth moved for admission of the photographs counsel for Appellant did not object. Accordingly, the photographs and other images were admitted. (N.T., 8/20/2019, pp. 151-152). When the Commonwealth asked to publish representative samples of the photographs to the jury, counsel for Appellant objected to publication, but only on the limited grounds that the photographs had not been authenticated by "the person it depicts." (*Id.* at 153). The objection was overruled. The next witness, Ms. Geyer, authenticated photographs by testifying that she was the person depicted in the challenged photographs. (*Id.* at 187). After Ms. Geyer authenticated the photographs, the Commonwealth published selected images to the jury. Appellant did not object. Under these circumstances, it appears that Appellant may not have preserved his challenge.

In any event, Appellant's assertion is substantively devoid of merit. Evidence of "prior bad acts" or "other acts" is generally not admissible if offered merely to show bad character or propensity for committing bad acts. Pa.R.E. 404(b)(1); *Commonwealth v. Wattley*, 880 A.2d 682, 686 (Pa. Super. 2005), *appeal dismissed as improvidently granted*, 924 A.2d 1203 (Pa. 2007); *Commonwealth v. Barger*, 743 A.2d 477, 480 (Pa. Super. 1999) (en banc). The purpose of this rule is

> to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

13

*Commonwealth v. Kinard*, 95 A.3d 279 (Pa. Super. 2014) (citing *Commonwealth v. Spruill*, 391 A.2d 1048 (Pa. 1978)).

However, even where there is some prejudicial impact, evidence of other crimes, wrongs, or bad acts may be admitted where there is a legitimate evidentiary purpose, its probative value outweighs the prejudicial effect likely to result from its admission, and an appropriate limiting instruction is given. *Commonwealth v. Paddy*, 800 A.2d 294, 307 (Pa. 2002). Specifically, "evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2). Moreover, Pa.R.E. 404(b) does not distinguish between prior and subsequent acts and is not limited to crimes proved beyond a reasonable doubt in court, but also includes other crimes, wrongs, and bad acts, even if they lack definitive proof. *Wattley*, supra, 880 A.2d at 683; *Commonwealth v. Ardinger*, 839 A.2d 1143, 1145 (Pa. Super. 2003) (internal citation omitted).

In order for evidence of prior crimes to be admissible to show intent, "the evidence must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Aguado*, 760 A.2d 1181, 1186 (Pa. Super. 2000) (*en banc*) (quoting *Commonwealth v. Camperson*, 612 A.2d 482, 484 (1992) (emphasis in original)). "There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of

14

required intent. *Commonwealth v. Camperson*, 612 A.2d 482, 483-84 (Pa. Super. 1992) (citations, quotations, and quotation marks omitted).

A common plan or scheme justifies admission where "two or more crimes [are] so related to each other that proof of one tends to prove the others or establish the identity of the person charged with the commission of the crime at trial…In other words[,] where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Fortune*, 346 A. 2d 783 (Pa. 1975). See also *Commonwealth v. Miller*, 644 A.2d 1310 (Pa. 1995) (requiring a "logical connection" between the crimes); *Commonwealth v. Elliott*, 700 A.2d 1243, 1249 (Pa. 1997) (internal citations omitted), abrogated on other grounds by *Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003). Similarities cannot be confined to insignificant details that would likely be common elements regardless of the individual committing the crime. *See Commonwealth v. Hughes*, 555 A.2d 1264, 1283 (Pa. 1989) (internal citations omitted). Evidence of a common scheme can establish any element of a crime, such as identity and mental state, so long as the scheme is not being used just to establish a propensity of the defendant to commit crimes. *See Commonwealth v. Miller*, 664 A.2d 1310, 1318 (Pa. 1995), abrogated on other grounds by *Commonwealth v. Hanible*, 836 A.2d 36 (Pa. 2003). In determining if other incidents show a common plan or scheme, the Court should focus not just on a defendant's actions, but on the factual circumstances of the incidents in their entirety. *See Commonwealth v. O'Brien*, 836 A.2d 966, 970-71 (Pa. Super. 2003) (internal citations omitted). Stated otherwise, the similarities of the incidents need not lay solely in the perpetrator's acts, but in the shared similarities in the details of each crime. *See Commonwealth v. Newman*, 598 A.2d 275, 278 (Pa. 1991).

15

The list referenced in Rule 404(b)(2) is not exhaustive. In addition to the enumerated purposes, our appellate courts have long recognized a *res gestae* exception that allows admission of other bad acts when relevant to furnish the context or complete the story of the events surrounding a crime, or where the particular crime or act was part of a chain, sequence, or natural development of events forming the history of a case. *See Commonwealth v. Dillon*, 863 A.2d at 601; *Wattley*, 880 A.2d at 687; *Commonwealth v. Page*, 965 A.2d 1212, 1221 (Pa. Super. 2009); *Commonwealth v. Passmore*, 857 A.2d 697, 711 (Pa. Super. 2004). As our Superior Court has noted, trial courts are not "required to sanitize the trial to eliminate all unpleasant facts from ... consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Paddy, supra*, 800 A.2d at 308.

Even when evidence is offered for one of these purposes, the trial court must still balance the need for the other crimes evidence in light of its convincingness and of all the prosecution's other evidence against its potential prejudice to the accused. *See Commonwealth v. Ulatoski*, 371 A.2d 186, 191 n.11 (Pa. 1977); *Commonwealth v. Wright*, 393 A.2d at 836; *Commonwealth v. Hude*, 390 A.2d 183, 186 (Pa. Super. 1978). Relevant evidence may be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Serge, supra*, 837 A.2d at 1260. "Whether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party." *Commonwealth v. Gordon*, 673 A.2d 866, 870 (Pa. 1996) (finding other acts evidence admissible as necessary part of the Commonwealth's case where a jury could find reasonable doubt without it). *See also Commonwealth v. Obrien, supra*. Other

16

considerations to be factored into the balancing test include the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility. McCormick, Evidence § 190 at 811 (4th ed. 1992). *See also Commonwealth v. Frank*, 577 A.2d 609 (Pa. Super. 1990) (enumerating and discussing balancing test factors, including ability for limiting instruction to reduce prejudice).

In this case, given the facts and circumstances of this continuous, inter-connected episode of sexual abuse, privacy invasion, and voyeurism that lasted for years, and the similarity between Appellant's surreptitiously filming both his daughter and his girlfriend partially nude or without their clothes on, the photographs of Ms. Geyer that were introduced in the trial satisfied several of the enumerated "exceptions" and "purposes" for which other acts evidence is permitted under Pa. R.E. 404(b)(2), including opportunity, intent, and common scheme or plan. Further, this case is a poster case for the separate "*res gestae*" exception since Appellant's "other bad acts" unquestionably showed he had captured and stored multiple photos of his girlfriend partially nude without her permission on multiple occasions, just as he had captured photos and video of his daughter. The contested photographs are part of the chain, sequence, and natural development of events that show the history and the natural development of this case, as well as Defendant's progression of sexual deviance and voyeurism.

Whether the photographs are viewed individually, together, or as part of the overall seven years of sexual deviances and assaults and voyeuristic conduct, including episodes in which Appellant captured photographs or video of his daughter coming out

17

of the shower with a camera he set up in his daughter's room without her knowledge, the photographic evidence was relevant under both the legal and common meanings of that term, the probative value of the photographs outweighed their prejudicial impact, and the photographs were admissible under the exceptions cited above. This is especially true since we gave an appropriate limiting instruction. (N.T., 8/21/2019, pp. 216). Accordingly, allowing the photos of Ms. Geyer to be admitted into evidence was proper.

C     Photo of "An Unidentified Female's Nude Breast"

In his third and final evidentiary challenge, Appellant argues that we erred by "admitting into evidence [a] photograph of an unidentified female's nude breast, whose face was not depicted in the picture, as such evidence had zero probative value, but was highly prejudicial and inflammatory. According to Appellant, no one could identify the subject of the photograph because it only depicted a female torso and the bottom of her arms. (N.T., 8/20/2019, pp.191-192). This challenge is frivolous.

As noted, Defendant was charged with, among other things, two different forms of Sexual Abuse of Children: creation of child pornography and possession of child pornography. The photograph that Appellant is referring to was shown as a part of a series of photographs (and a video) found on Appellant's electronic devices that depicted his daughter partially nude or in compromising positions. Although the subject's face was not shown, and contrary to Appellant's baseless supposition, Ms. Geyer unequivocally identified the person depicted in the photo as her daughter, the victim in this case. (N.T., 8/20/2019, pp. 190). Since at all pertinent times her daughter was a child between 7 and 14 years-old, the photograph was clearly relevant to the child pornography charges. Further, Appellant's bald assertion that Ms. Geyer, who had

18

cared for her daughter for 15 years could not identify her child's body is made of whole cloth and, in any event, goes to the weight not the admissibility of the challenged photograph.

Simply, the photograph was highly relevant and its probative value far outweighed its prejudicial effect. Appellant's claim that the photograph was irrelevant, could not be authenticated, and was inadmissible is specious.

For these reasons, we believe that the judgment of sentence should be affirmed.

BY THE COURT:

DATE: August 26, 2020

_____
Jonathan Mark, Judge

Clerk of Courts
AUG 25 '20 PM 1:52

cc:     Superior Court of Pennsylvania
        Jonathan Mark, J.
        District Attorney (MTR)
        Earl D. Raynor, Jr., Esq.

19

Appendix A

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | No. 2177 CRIMINAL 2018 |
| : | |
| v. : | |
| : | |
| MATTHEW SISLER, : | |
| : | |
| Defendant : | |

## OPINION

The matter before the Court is the Post-Sentence Motions of Defendant Matthew Sisler ("Defendant") for a New Trial or a New Sentence. Defendant challenges the discretionary aspects of his sentence as "manifestly excessive and unreasonable," asserts that a majority of the convictions are against the weight of the evidence, and reiterates his challenge to the constitutionality of the Pennsylvania Sex Offender Registration and Notification Act ("SORNA"), 42 Pa. C.S.A. Section 9799.10 *et. seq.* For the reasons that follow, we find that Defendant's contentions lack merit. Accordingly, his Motions will be denied.

## BACKGROUND

On August 21, 2019, after a multi-day jury trial, Defendant was convicted of Rape by Causing Impairment, Rape of a Child, Statutory Sexual Assault, Aggravated Indecent Assault of a Person Under 16, Aggravated Indecent Assault of a Child, Incest, Endangering the Welfare of a Child, Corruption of a Minor, Unlawful Contact with a Minor, Unauthorized Use of Intoxicant, Sexual Abuse of a Minor – Filming a Prohibited Sexual Act, Sexual Abuse of a Minor – Possession of Child Pornography, and Person

2

not to Possess a Firearm. The convictions were based on Defendant's sexual abuse of his daughter for seven years beginning when she was 7 years old.

In the order accepting the verdict, we scheduled a sentencing hearing, instructed our Probation Department to conduct a Pre-Sentence Investigation ("PSI"), and, pursuant to Section 9799.24 of the Pennsylvania Sex Offender Registration and Notification Act ("SORNA"), 42 Pa. C.S.A. 9799.24, directed the Pennsylvania Sexual Offenders Assessment Board ("SOAB") to conduct a Sexually Violent Predator ("SVP") assessment.

Since both Defendant and his daughter testified during the trial, the Commonwealth requested transcription of their testimony so that the transcripts could be provided to SOAB as part of the SVP assessment. Both transcripts were filed. Defendant has not asked for copies of either transcript.

The PSI and SVP assessments were conducted. Reports were provided to the Court and made available to counsel for both parties prior to sentencing.

On January 2, 2020, after a hearing, Defendant was sentenced to an aggregate of 63.5 to 127 years' incarceration. In addition, Defendant was classified as a Tier 3 Sex Offender and directed to comply with the registration, reporting, and other requirements of SORNA. During the hearing, we articulated both our reasons for the sentence imposed and the documents and information we considered in imposing the sentence. Among other things, we informed Defendant that we considered the evidence admitted during his trial, the PSI report, the SOAB report, the statements and arguments made during the sentencing hearing, and the applicable sentencing laws, rules, and guidelines.

3

On January 12, 2020, Defendant timely filed the instant Post-Sentence Motions with an accompanying Memorandum of Law. A hearing on the Post-Sentence Motions was scheduled for March 30, 2020, and the parties were directed to file briefs at least 10 days prior to the hearing.

On March 24, 2020, Defendant filed a request for transcripts of his trial and the sentencing hearing and a simultaneous Motion for Continuance and Extension of the One Hundred and Twenty (120) Day Time Period for Adjudication of the Post-Sentence Motions. The continuance was requested for two reasons: the need for transcripts to litigate the Post-Sentence motions and the Coronavirus pandemic which had resulted in issuance of Emergency and Court Closure orders by this Court and the Pennsylvania Supreme Court.

In response, we issued two orders. The first directed that the requested transcripts be prepared and filed upon timely payment of a specified deposit. The second granted the continuance, directed that the Post-Sentence Motions would be decided on briefs, and established a briefing schedule that was based on Defendant's receipt of transcripts if he paid for them, or the date the deposit was due if he did not.

Defendant did not tender the transcript deposit and did not ask for an extension of time to pay. As a result, and in accordance with applicable rules, the order directing transcription was vacated. Defendant has not filed another motion for transcripts. Accordingly, there is a limited record on which to decide Defendant's Post-Sentence Motions.[1]

---

[1] As noted, the trial testimony of Defendant and his daughter was transcribed at the request of the Commonwealth. After sentencing, also at the request of the Commonwealth, the testimony of a police officer was transcribed. Defendant has not requested or paid for these transcripts, and did not cite to the transcripts in any Post-Sentence filing.

4

Similarly, Defendant did not file a brief or supplemental Memorandum. Likewise, the Commonwealth did not file a brief.

## DISCUSSION

### 1.   Weight of the Evidence

Defendant contends that the convictions of Rape by Causing Impairment, Rape of a Child, Statutory Sexual Assault, Incest, Aggravated Indecent Assault of a Person under 16, Aggravated Indecent Assault of a Child, Endangering the Welfare of a Child, Corruption of a Minor, Unauthorized Use of an Intoxicant, Sexual Abuse of a Minor, Sexual Abuse of a Minor- Possession of a Depiction of a Prohibited Sexual Act, and Person Not to Possess Firearm were against the weight of the evidence. We disagree.

Initially, we note that while Defendant styled, captioned, and argued his evidentiary challenge as a weight claim and recited only the legal standards by which such claims must be decided, portions of his Post-Sentence Motions, Memorandum, and Motion for Extension of Time can be read as challenging the sufficiency of the evidence as well. As a result, it appears that he has incorrectly mixed the two separate challenges. To obviate the conflation in order to avoid unnecessary issues down the road, we will briefly address the sufficiency of the evidence along with the weight claim.

Regarding both claims, as Defendant acknowledged in his Motion for Extension of Time, trial transcripts are necessary to fully and properly address his challenges. Since Defendant did not obtain the transcripts, and has not requested, paid for, or cited to the three transcripts of individual witness testimony that have been filed, we find that he has waived his evidentiary claims.

Alternatively, both evidentiary challenges lack merit.

5

The standard of review upon a challenge to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the Trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001) (citations and quotation marks omitted).

The existence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict. *Com. v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2004). It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *In re T.B.*, 11 A.3d 500, 504 (Pa. Super 2010); *Com. v. A.W.C.* 951 A.2d 1174 (Pa. Super. 2008). While passing upon the credibility of witnesses, the trier of fact is free to believe all, or part, or none of the evidence. *Commonwealth v. Dupre*, 866 A.2d 1089 (Pa. Super. 2005).

6

The uncorroborated testimony of a complaining witness can be sufficient to convict a defendant in a sexual assault case. *Commonwealth v. Bishop*, 742 A.2d 178 (Pa. Super. 1999), app. Denied, 563 Pa. 638, 758 A.2d 1194 (2000). This is true even where the defendant presents contradictory evidence. *Commonwealth v. Davis*, 437 Pa. Super. 471, 650 A.2d 452 (1994), *aff'd on other grounds*, 543 Pa. 628, 674 A.2d 214 (1996). Simply, the fact finder determines the credibility of witnesses, and the credibility of one witness may be sufficient to sustain a conviction. *Commonwealth v. Johnson*, 838 A.2d 663 (Pa. 2003).

Read in light of these standards, the evidence was amply sufficient to support the verdicts. In very broad summary:

Defendant was charged with committing numerous sex offenses, Corruption of a Minor, Endangering the Welfare of a Child, Sexual Abuse of a Child (Child Pornography), and other crimes against his daughter, who at all times was a child. At trial, Defendant's daughter testified that Defendant sexually abused her for an extended period of time, drugged her, and defiled her by taking photographs or videos while she was naked or partially naked. Among other things, Defendant's daughter testified that Defendant began touching her on her outer clothing, then eventually progressed to bare skin. When she was 7 years old, Defendant woke her up during the night, gave her a sleeping pill, and began to touch her breasts over her pajamas. (N.T., 8/19/2019, p. 7). On multiple subsequent occasions Defendant entered his daughter's bedroom at night to give her sleeping pills to make her compliant so that he could perform sexual acts on her. Over time, Defendant progressed to touching his daughter under her clothing and eventually used his penis to enter her vagina. (*Id.* at 11). At one point, Defendant's

7

daughter refused to take the pills, so Defendant began putting them in her food. (*Id.* at 13). Specifically, Defendant gave his daughter crushed pills in a cookie and a milkshake he made for her. (*Id.*). When his daughter was about 9 years old, she would wake up to Defendant putting his fingers in her vagina. (*Id.* at 17). When she was about 12 or 13, Defendant started penetrating her vagina with his penis. (*Id.* at 18-21). Defendant also used his mouth to penetrate her vagina about two times. *Id.* Defendant also made her masturbate him. On some occasions, when she woke up to Defendant touching her, she also noticed Defendant taking pictures. (*Id.* at 25).

Overall, the testimony of Defendant's daughter, standing alone, was sufficient to sustain all sex offenses and the convictions for the crimes against children with which Defendant was charged.

But his Daughter's testimony did not stand alone. There was substantial additional testimonial, documentary, photographic, video, and physical evidence which at once supported her testimony and established, or assisted in establishing, the elements of the crimes charged. In this regard, while he denied raping or sexually assaulting his daughter, and denied criminal intent, Defendant during his testimony admitted that there were several photos of his daughter scantily clad or naked on the Defendant's Samsung Galaxy tablet and Seagate computer and that he took videos of her with no pants on in his bedroom. (N.T., 8/21/2019, pp. 94, 99). Photographs and videos of his naked or partially naked daughter were admitted into evidence. In addition, Defendant acknowledged that he placed a camera in his daughter's room to record her. Specifically, Defendant placed the camera in a toy box in his daughter's bedroom, which

8

recorded her in a towel or blanket possibly coming out of the shower. (N.T., 8/19/2019, p. 7; N.T., 8/21/2019, p. 105).

In regards to the firearm, it was found in Defendant's home, under his cigarettes, and within his reach. Further, after Defendant denied using the gun, the Commonwealth played a video in which Defendant was demonstrating to his mother how to use the gun. (*Id.* at 116-117). Defendant's daughter also testified that the Defendant would dry fire the gun to scare the cats. (N.T., 8/19/2019, p. 52).

Simply, when the above is viewed in light of the applicable standards along with the other evidence presented at trial, it becomes clear that there was more than enough to support the challenged convictions.

A court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Lyons*, 79 A.3d 1053 (Pa. 2013), cert. denied, 134 S. Ct. 1792 (2014). A challenge to the weight of the evidence, in contrast to a challenge to the sufficiency of the evidence,

> concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

9

*Widmer*, 744 A.2d at 751-752 (internal citations, footnote, and quotation marks omitted).

Accordingly, trial courts possess only narrow authority to reverse a jury verdict on a weight of the evidence challenge.

> The general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial. There is, of course, some tension between the power of trial courts to overturn jury verdicts premised upon weight claims, and the bedrock principle that questions of credibility are exclusively for the fact-finder. Accordingly, the authority for the trial judge to upset a verdict premised upon a weight claim is narrowly circumscribed. A trial judge cannot grant a new trial because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. Instead, a new trial should be granted only in truly extraordinary circumstances, *i.e.*, when the jury's verdict is *so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.*

*Armbruster v. Horowitz*, 813 A.2d 698, 702-703 (Pa. 2002) (internal citations and quotation marks omitted; emphasis in original).

The relevant evidence is broadly summarized above. The jury heard all of the testimony, including the testimony of Defendant and his daughter, assessed credibility, and had the benefit of all other evidence that was admitted. The jury obviously accepted, believed, and found the Commonwealth's evidence persuasive and just as clearly rejected Defendant's claim of innocence or lack of wrongdoing. The jury acted completely within its province, the verdict does not shock the conscience or one's sense of justice, and this jurist detects no basis to invade the province of the jury.

Simply, having presided over the trial and reviewed the available record, the undersigned can say without hesitation or equivocation that the Commonwealth

10

presented more than enough evidence to support all convictions, that no individual conviction was against the weight of the evidence, and that the verdict neither shocks one's conscience nor denies justice.

2. <u>Length of Sentence</u>

Defendant challenges the discretionary aspects of his sentence. He does so by contending that we erred, abused our discretion, and violated fundamental sentencing norms by imposing a sentence that was manifestly excessive, unreasonable and disproportionate to Defendant's conduct, not necessary for the protection of his daughter and the community, and not rationally related to meeting his rehabilitative needs. Additionally, Defendant asserts that we relied on an impermissible sentencing factor. (Def.'s Post-Sentence Mot.. ¶¶ 6B; Def.'s Memorandum in Support of Motion, pp. 12 – 18). Defendant's sentencing challenge lacks merit.

Sentencing is a matter within the sound discretion of the trial court. See *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). In sentencing each particular defendant, the sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed. *Id.* The court must impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa. C.S.A. § 9721(b). See *Walls*, 926 A.2d at 967-68; *Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008) ("*Dodge II*"), *appeal denied*, 980 A.2d 605 (Pa. 2009).

The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing are instructive and advisory, but are not binding on the sentencing court.

11

The court is obligated to consider the guidelines, but is under no duty to sentence a particular defendant within the guidelines or to impose the minimum possible confinement consistent with the guidelines. *Walls*, 926 A.2d at 575; *Dodge II*, 957 A.2d at 1201. "Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996)).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa. C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant[.]" *Commonwealth v. Walls*, 846 A.2d 152, 157 (Pa. Super. 2004). Additionally, a court should consider the particular circumstance of the offense and the character of the defendant, and should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. *Moury*, 992 A.2d at 171 (citing *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. den*, 545 U.S. 1148 (2005)).

The court determines whether aggravating circumstances exist. If aggravating circumstances are present, "the court may impose an aggravated sentence ...." 204 Pa. Code. § 303.13(a). A sentencing judge "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Stewart*, 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). *See also Commonwealth v. Duffy*, 491 A.2d 230, 233 (Pa. Super. 1985) (holding that a sentencing judge may consider any

12

legal factor in deciding whether a defendant should be sentenced within the aggravated range). A sentencing judge may even consider uncharged criminal conduct for sentencing purposes.

> Not only does the case law authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background.

*Commonwealth v. P.L.S.*, 894 A.2d 120, 131 (Pa. Super. 2006), *appeal denied*, 906 A.2d 542 (Pa. 2006). *See also* 204 Pa. Code §303.5(d).

The court also determines whether the sentence imposed should run consecutively or concurrently with other sentences to which the defendant is subject. In this regard, it is well-settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. See *Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010) (and cases cited therein) and *Commonwealth v. Marts, 889,* A.2d 608 (Pa. Super. 2005) (same). *See also* 42 Pa. C.S.A. §9721(a).

The sentencing judge must state his or her reasons for the sentence on the record. 42 Pa. C.S.A. § 9721(b). The judge may satisfy this requirement by stating or demonstrating at time of sentencing that the judge has been informed of the reasons by the PSI report. *Commonwealth v. Coss*, 695 A.2d 831, 834 (Pa. Super. 1997); 42 Pa. C.S.A. § 9721(b). When, as here, a PSI report exists, the law presumes that

> the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself....[Sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions

13

of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d at 18. See also *Moury*, 992 A.2d at 171; *Commonwealth v. Fowler*, 893 A.2d 758 (Pa. Super. 2006); *Commonwealth v. Tirado*, 870 A.2d 362 (Pa. Super. 2005); *Commonwealth v. Burns*, 765 A.2d 1144, 1150-1151 (Pa. Super. 2000). In this regard, a sentencing judge is not required, when giving the reasons for a particular sentence, to make a specific reference to the factors set forth in the Sentencing Code that were considered in deciding the sentence, but the record as a whole must reflect that the judge in fact considered the sentencing factors. *Commonwealth v. Coulverson*, 34 A.3d 135, 145-146 (Pa. Super. 2011).

If the sentence is within the guidelines but departs from the standard range, the reasoning must include a statement as to why the sentence is in the aggravated or mitigated range. 204 Pa. Code § 303.13. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777 (Pa. Super. 2009); *Commonwealth v. Hoover*, 492 A.2d 443 (Pa. Super. 1985). Similarly, if the sentencing court imposes a sentence outside of the guidelines, it must provide a sufficient statement of its reasons for the deviation, and its failure to do so may constitute grounds for resentencing. *Walls*, 926 A.2d at 963. *See Commonwealth v. Warren*, 84 A.3d 1092 (Pa. Super. 2014); 42 Pa. C.S.A. § 9721; 204 Pa. Code § 303.1.

14

While a sentencing judge may satisfy the requirement to state reasons for the sentence given in a variety of ways, the reasons must be articulated at the time sentence is imposed and may not be supplied later in an appeal opinion issued in accordance with Pa. R.A.P. 1925(a). *See Commonwealth v. Giles*, 449 A.2d 641 (Pa. Super. 1982) (and cases cited therein). Accordingly, the intent of a judge's given sentence is determined at sentencing, rather than after an appeal from the judgment of sentence has been taken. (*Id.*).

In sum, our sentencing laws establish a framework for sentencing. Within the established framework, trial courts have broad discretion in determining the range of permissible confinements that best suits the particular defendant and the circumstances surrounding the event. See *Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992). In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. *Commonwealth v. Miller*, 965 A.2d 276, 277 (Pa. Super. 2009) (quoting *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000)). A sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion. Finally, where the sentencing court imposes a standard-range sentence with the benefit of a PSI report, the Superior Court will not consider the sentence excessive. *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (citing *Commonwealth v. Moury, supra*).

The statutory and judicial standards of review are reflective of the type of discretion vested in sentencing courts. Statutorily, the Sentencing Code prescribes a slightly different standard of appellate review for sentences that are outside the

15

guidelines as opposed to sentences that fall within guideline ranges. Sentences that fall within guideline ranges are subject the "clearly unreasonable" standard of 42 Pa. C.S.A. Section 9781(c)(2), while sentences that fall outside the guidelines are subject to the "unreasonable" standard of Section 9781(c)(3). An "unreasonable" decision from the sentencing court would be one that is " 'irrational' or 'not guided by sound judgment.' " *Walls*, 926 A.2d at 963. See also *Dodge II*, 957 A.2d at 1200; 42 Pa. C.S.A. § 9781(c)(2) and (3).

Judicially, our Supreme Court has articulated the appellate standard of review as follows:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion....[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. In more expansive terms, our Court recently offered: an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Walls*, 926 A.2d at 961 (internal citations, quotation marks, and footnote omitted).

In this case, Defendant's challenge to the discretionary aspects of his sentence is based, at least in part, on Defendant's assertion that the aggregate sentence is outside the guidelines. That is not accurate. While one or two of the individual sentences were

16

in the aggravated range, the rest were in the standard range. Of the individual standard-range sentences, some are equal to the statutory maximum. However, that does not convert those sentences, individually or collectively, to departure sentences. The reason why the top of the standard range for some of the crimes was also the statutory maximum is because Defendant had a prior record score of "5." Simply, while some of the individual sentences are in the aggravated range, and therefore the overall sentence could legitimately be considered an aggravated range sentence, the assertion that the sentence is outside the guidelines is simply wrong.

Substantively, Defendant's claims that the sentence was manifestly excessive (his primary contention), disproportionate, and violative of sentencing norms is completely belied by the record. Regarding the substantive claims, we stand by the reasons articulated at the time of sentencing. As we stated on the record, before imposing sentence, we considered the evidence presented during trial, the PSI report, the SOAB report, the statements and arguments made during the sentencing hearing, the applicable sentencing laws and guidelines, and other relevant information. We also fully explained the reasons why the sentence was imposed. Since as discussed Defendant failed to pay for or obtain the transcript of the sentencing hearing, we cannot quote or cite to our specific rationale. However, the reasons included, but are not limited to: the sustained sexual abuse Defendant regularly perpetrated on his daughter for seven years, from the time she was 7 until she was 14; the nature and grading of the crimes of which Defendant was convicted; the life-long, irreversible harm Defendant's daughter suffered at his hands; the impact of Defendant's crimes on other family members and the community; the predatory, pedophilic, and opportunistic nature of

17

Defendant's conduct; the position of trust Defendant violated; Defendant's prior record and prior record score; the mental abnormality Defendant was found to have; Defendant's low rehabilitative prospects; the fact that Defendant also took compromising photographs of his daughter's mother; and Defendant's lack of remorse. The reasons articulated, all of which are supported by the record, at once amply explain why the sentence was imposed and demonstrate that in sentencing Defendant we neither erred nor abused our discretion.

As a separate branch of his sentencing challenge, Defendant argues that we improperly considered the SOAB report because the evaluator did not interview Defendant. Specifically, Defendant argues that:

> Since Defendant was not interviewed, the psychologist had no factual basis for determining whether or not Defendant suffered mental abnormalities or disabilities, or exhibited behavioral characteristics which would support a finding that he was a sexually violent predator. Accordingly, the assessment was fundamentally flawed, as it lacked an insufficient basis to support its conclusion that Defendant is a Pedophile and Sexually Violent Predator. Finally, with an SVP Assessment labeling Defendant a Sexually Violent Predator, could the sentencing court actually set that aside, as if it had no knowledge of the finding. The clear answer is no.

(Def.'s Memorandum in Support of Post-Sentence Motions, p. 18). This, too, lacks merit.

Defendant's contention that we improperly considered the SOAB report is made of whole cloth. Defendant did not present evidence, expert or otherwise, in support of his claim. Similarly, he did not cite any legal authority. As the SOAB report lists and as the evaluator stated, there was ample information available to the evaluator, even

18

without an interview with Defendant, on which the evaluator could render opinions within the standards of her profession. Simply, Defendant's contention that there was "no factual basis" for the evaluator's conclusions does not hold water.

In addition, Defendant's protestations notwithstanding, SVP evaluations are valuable sentencing aids, the conclusions of which may at sentencing be used in the same manner that results of other types of assessments, such as drug and alcohol evaluations, psychological evaluations, psychiatric evaluations, and risk assessments, are traditionally used. In this case, at the time we ordered the SVP evaluation, the law was such that we could not hold an SVP hearing or classify Defendant as an SVP. Regardless, we ordered the assessment in part because, given the facts and numerous sex crimes of which Defendant was convicted, it was a relevant type of pre-sentence evaluation to order. Simply, we did not err by considering the SVP evaluation.

3.   SORNA Challenge

Finally, Defendant re-asserts his challenge, first lodged and denied before sentencing, to the constitutionality of SORNA. However, our determination has not changed. As explained to the parties, an *en banc* panel of this Court previously rejected identical challenges to SORNA in other cases. *See Commonwealth v. Tomsic, et. al.,* 1517 Criminal 2016 (C.P. Monroe, entered July 19, 2019) (*en banc* order) (Patti-Worthington, P.J., Mark, J., and S. Higgins, J.) (copy attached). *See also Commonwealth v. Romero,* No. 1534 Criminal 2017 (C.P. Monroe, filed October 29, 2019) (Mark, J.); *appeal pending,* No. 2387 EDA 2019 (Pa. Super., filed August 22, 2019). For the reasons stated in the cited orders issued in those cases, Defendant's challenge is meritless.

19

Further, the Constitutionality of SORNA is currently pending before our Supreme Court in an appeal filed by the Commonwealth from a decision of the Court of Common Pleas of Chester County holding that SORNA is unconstitutional. *Commonwealth v. Torsilieri*, No. 1570 Criminal 2017 (C.P. Chester, filed July 10, 2018) (Sarcione, J.), appeal filed, 37 MAP 2018 (Pa., July 13, 2018). The constitutional challenge raised by Defendant in this case (and in the other cases heard by the *en banc* panel of this Court) is based on and patterned after the trial court's opinion in *Torsilieri*. Therefore, Defendant's challenge will ultimately rise or fall with our Supreme Court's decision in *Torsilieri*.

For these reasons, we enter the following.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA  :  No. 2177 CRIMINAL 2018
                                    :
                                    :
              v.                    :
                                    :
MATTHEW SISLER,                     :
                                    :
         Defendant                  :

## ORDER

**AND NOW**, this 2nd day of June, 2020, it is ORDERED that Defendant's Post-Sentence Motions are **DENIED**.

Defendant is advised that he has thirty (30) days in which to file an appeal to the Superior Court.

**BY THE COURT:**

_____
JONATHAN MARK, J.

cc:    District Attorney (MTR)
       Earl Raynor, Esq.

Clerk of Courts
JUN 2 '20 PM 3:03
amb

21